## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALBERT J. REMZ III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      CIVIL ACTION NO. 3:2006-33 |
| | ) |
| JO ANNE B. BARNHART, | )      JUDGE GIBSON |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 9-12). The Court has jurisdiction of this matter pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the standards applicable under 42 U.S.C. § 405(g). For the reasons that follow, the Court will deny the Motion for Summary Judgment filed by the Plaintiff (Document No. 9) and grant the Motion for Summary Judgment filed by the Commissioner of Social Security (Document No. 11).

Albert Remz ("Plaintiff") protectively filed an application for supplemental security income benefits under Title XVI of the Social Security Act on May 20, 2003, alleging disability as of October

1

1, 1999, because of depression, anxiety, and panic attacks.[1] R. p. 16. After the initial denial of the claim, the Plaintiff filed a timely request for a hearing. A hearing was held in Johnstown, Pennsylvania, on January 24, 2005, before Administrative Law Judge Douglas W. Abruzzo ("ALJ"). R. p. 39. The Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. pp. 41-76. Lisa McDonald also appeared and testified at the hearing. R. pp. 76-82. Joseph Bentivegna, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 83-91.

On July 18, 2005, the ALJ issued a decision which was unfavorable to the Plaintiff. R. pp. 13-26. The Appeals Council denied the Plaintiff's request for review on January 9, 2006, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. R. pp. 5-8. The Plaintiff filed a complaint in this matter on February 22, 2006. Document No. 4. Jo Anne Barnhart, Commissioner of Social Security ("Commissioner"), filed an answer on April 13, 2006. Document No. 6. The Plaintiff and the Commissioner filed cross-motions for summary judgment on May 12, 2006, and June 14, 2006, respectively. Document Nos. 9 & 11.

A District Court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In

---

[1]At the hearing, the Plaintiff amended his alleged onset date to March 29, 2003. R. p. 45. This was noted in the ALJ's decision. R. p. 16. The reason for the amendment was the fact that the Plaintiff, on a prior application, had been denied benefits in a decision issued on March 28, 2003. R. p. 106.

discussing this standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and

deference must be given to the Commissioner's findings unless there is an absence of substantial

evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185,

1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability

Insurance Benefits (DIB) or Supplemental Security Income (SSI) benefits, the Commissioner uses a

five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step

process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the

3

claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003)

(footnotes omitted; brackets in original).

In his decision, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of March 29, 2003. R. p. 25. At the second step of the sequential evaluation process, the ALJ identified the Plaintiff's impairments as asthma, a generalized anxiety disorder, a panic disorder, and a personality disorder (not otherwise specified). *Id.* Although these impairments were deemed to be "severe" for purposes of 20 C.F.R. § 416.920(a)(4)(ii), it was determined that they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing of Impairments" or "listed impairment"). *Id.* In accordance with 20 C.F.R. § 416.945, the ALJ made the following finding with respect to the Plaintiff's residual functional capacity:

The claimant has the residual functional capacity to perform the physical exertion and non-exertional requirements of work except for work above the heavy exertional level, work that requires even moderate exposure to fumes, odors, dusts, gases, and environments with poor ventilation, work that requires more than occasional interaction with supervisors, and work that does not avoid interaction with coworkers and the general public[.]

*Id.* Moving on to the fourth step, the ALJ concluded that the Plaintiff was unable to return to his past relevant work as a bakery laborer, grocery stocker or nursing aide. *Id.*

At the time of the ALJ's decision, the Plaintiff was thirty-four years of age and had a twelfth grade education. R. pp. 25-26. He had acquired no work skills which were readily transferable to other

4

work consistent with his residual functional capacity. R. p. 26; 20 C.F.R. § 416.968. Based on the applicable residual functional capacity and vocational assessments, the ALJ concluded that the Plaintiff could work as a junk yard worker, a saw mill helper, a metal assembler, a drill worker, a carpet helper, an electric helper, a plumber helper, a plaster helper, an equipment distributer, a maintenance worker, a laundry sorter, or a fast food night cleaner. R. p. 24. Mr. Bentivegna's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. pp. 84-91.

In support of his motion for summary judgment, the Plaintiff makes two distinct arguments. First, he contends that the ALJ failed to consider his sleep apnea impairment, and that his residual functional capacity assessment was flawed for that reason. R. pp. 20-22. Second, he argues that the ALJ improperly rejected the opinions of his treating physicians. R. pp. 22-26. The Court will proceed to address each argument in turn.

The Plaintiff's first argument appears to be based on an oversight. The Plaintiff states that, in the ALJ's decision, "there is no reference to the sleep apnea condition, whether it is a severe or non-severe impairment and its effect individually or in combination upon the Plaintiff's residual functional capacity." Document No. 10 p. 21. If this were true, the Plaintiff would certainly be entitled to a remand. The applicable regulation required the Commissioner to consider all of the Plaintiff's impairments, severe and non-severe alike, in determining his residual functional capacity. 20 C.F.R. § 416.945(a)(2). Nevertheless, the Plaintiff's statement is simply inaccurate. In his decision, the ALJ stated as follows:

> The record also contains the results of a polysomnogram performed on the claimant, dated February 5, 2005. This study showed that the claimant had obstructive sleep apnea syndrome, but that it could be treated effectively with pressure of 9 cm of water,

5

and the use of a Respironics Comfort Gel nasal mask with heated humidity. The doctor recommended the claimant's sleep apnea be treated with a C-pap machine set at 9 cm of water (Exhibit C13F). Nothing in the record indicates that the claimant's obstructive sleep apnea cannot be adequately treated with a C-pap machine so that, within 12 months of its diagnosis, the claimant's sleep apnea would have no more than a minimal impact upon the claimant's ability to engage in work-related activities (Exhibits C1F-C14F). In addition, when the claimant applied for benefits, he did not allege sleep apnea as an illness, injury, or condition that limited his ability to work (Exhibit C2E). Based upon the foregoing discussion of the medical evidence, the Administrative Law Judge concludes that the claimant's sleep apnea would have no more than a minimal impact upon the claimant's ability to engage in work-related activities and, therefore, is a "non-severe" impairment (Social Security Rulings 85-28 and 96-3p).

R. p. 17. The ALJ specifically cited Social Security Ruling 96-3p, which the Plaintiff cites in his brief. Document No. 10 p. 21. It is not clear why the Plaintiff's argument departs so radically from the text of the ALJ's decision. The Commissioner asserts that the Plaintiff's argument is based on a "fallacious factual predicate." Document No. 12 p. 15. In truth, the Court does not believe that the Plaintiff intends to deceive the Court. It appears that the Plaintiff's argument is simply based on an inadvertent oversight. Needless to say, the Plaintiff does not argue that the ALJ's determination with respect to the Plaintiff's sleep apnea impairment is not supported by substantial evidence. Instead, he contends that no such determination was made at all. Document No. 10 pp. 20-22. Since that is simply not true, the Court need not examine the issue further.

The Plaintiff further argues that the ALJ's hypothetical questions to Mr. Bentivegna were defective because they did not include the Plaintiff's sleep apnea "impairment." *Id.* p. 22. The Plaintiff's argument is mistaken for two reasons. First of all, as noted earlier, the assertion that the ALJ did not consider the Plaintiff's sleep apnea is untrue. Secondly, the ALJ was not required to include all of the Plaintiff's *impairments* in his hypothetical questions to Mr. Bentivegna. Instead, he was

6

required to include all of the Plaintiff's *limitations* in those questions. "Residual functional capacity is defined as that which an individual is still able to do despite the *limitations* caused by his or her *impairments*." *Pearson v. Barnhart*, 380 F.Supp.2d 496, 505 (D.N.J. 2005)(emphasis added). Impairments which do not result in limitations do not impact a claimant's residual functional capacity and, therefore, are not accounted for in an ALJ's hypothetical questions. To the extent that the Plaintiff believes that his sleep apnea resulted in limitations, it is clear that the ALJ was not required to convey to Mr. Bentivegna every limitation *alleged* by the Plaintiff. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Instead, the ALJ was required to convey only those limitations which he found to be *credibly established. Id.* Since the ALJ determined that the Plaintiff's sleep apnea could be adequately controlled by a C-pap machine (a determination which the Plaintiff does not *acknowledge* and, therefore, does not *challenge*), the ALJ's conclusion that this impairment did not result in work-related limitations will not be disturbed.

In his second argument, the Plaintiff contends that the ALJ failed to give appropriate weight to the opinions of his treating physicians. Document No. 10 pp. 22-26. On March 26, 2004, Dr. Giselly Tepper reported that the Plaintiff was temporarily disabled for a period of twelve months or more. R. p. 265. This assessment was based on a physical examination, a review of the medical records, and a clinical history. *Id.*

The Plaintiff further supports his argument by pointing to the report of Donald Voytish, a senior therapist, which is dated February 19, 2004. R. p. 222. In that report, Mr. Voytish stated as follows:

His biggest struggle remains if he should return to work at this time. He tires very easily, cannot focus or concentrate for any long period of time, and cannot remember the things he needs to remember around important issues. He has also recently been

7

diagnosed with a severe case of Asthma which has affected severely his ability to breathe. His father, who had originally felt Albert should return to work, has now completely changed his mind after being able to work with Albert during the summer and observing how quickly Albert tired and the length of time it took him to recover. It would appear that Albert is not able to find and maintain meaningful, gainful, employment.

*Id.* The Plaintiff was diagnosed with a recurrent and severe form of major depressive disorder. *Id.*

On January 28, 2005, Dr. Richard Cassone, the Plaintiff's treating psychiatrist, completed an assessment form describing the effect that the Plaintiff's mental impairments had on his ability to perform work-related tasks. R. pp. 272-273. In the "occupational adjustments" category, Dr. Cassone indicated that the Plaintiff had a fair ability to follow work rules and maintain attention and/or concentration, but no ability to relate to co-workers, deal with the public, use judgment, deal with work stresses or function independently. R. p. 272. In the "performance adjustments" category, Dr. Cassone opined that the Plaintiff had a fair ability to understand, remember and carry out simple job instructions and a poor (or nonexistent) ability to understand, remember and carry out both complex and detailed, non-complex job instructions. R. p. 273. Finally, in the "personal-social adjustments" category, Dr. Cassone reported that the Plaintiff had a fair ability to maintain his personal appearance and a poor (or nonexistent) ability to behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability. *Id.* Dr. Cassone nevertheless believed that the Plaintiff was capable of managing his own benefits in an advantageous manner. *Id.*

The law governing an ALJ's treatment of the opinion of a treating physician has been clearly established. If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques

8

and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." 61 Fed. Reg. 34490, 34491. The ALJ must accord great weight to the reports of treating physicians, "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If the ALJ determines that a treating physician's opinion is outweighed by conflicting medical evidence, he may reject that opinion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Whenever the ALJ's decision is not fully favorable to the claimant, the opinion of the ALJ "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 61 Fed. Reg. 34490, 34492.

In the instant case, the Court is convinced that the ALJ's decision to reject some of the opinions expressed by the Plaintiff's treating physicians was based on countervailing medical evidence. The ALJ relied on the treatment notes of Dr. Anjaneyulu Karumudi, a treating psychiatrist, in order to determine that the Plaintiff was not statutorily disabled. R. p. 21. On January 13, 2004, Dr. Karumudi reported: "I told him that our goal is for him to get better and go back to the workforce, rather than go on disability." R. p. 223. Dr. Karumudi assessed the Plaintiff's Global Assessment of Functioning

9

("GAF") to be at 60. *Id.* As the Commissioner points out, a GAF of 60 is "indicative of moderate symptoms or a moderate impairment in social, occupational, or school functioning." Document No. 12 p. 8. On June 24, 2003, the Plaintiff reported that he was having occasional anxiety, but that he was able to handle it well with the help of medication. R. p. 224. The Plaintiff's GAF was again assessed at 60. *Id.* A treatment note dated October 20, 2003, indicates that the Plaintiff did not believe that he was capable of holding a job, but it appears that Dr. Karumudi was recording the Plaintiff's subjective feelings rather than his own independent impressions. *Id.*

The ALJ also supported his conclusion with the treatment notes of Dr. James Koban, who was a treating psychiatrist. R. pp. 22-24. Dr. Koban indicated that the Plaintiff had been non-compliant with his treatment regimen. R. p. 228. On September 27, 2002, Dr. Koban questioned the Plaintiff's desire to work. R. p. 230 ("I directly confronted Joe and told him that I do not think he wants to work. I told Joe until he does want to work, he will not be able to work."). On December 27, 2002, Dr. Koban highlighted the inconsistency between the Plaintiff's ability to go hunting and alleged inability to continue working at Burger King. *Id.* The ALJ clearly explained that the opinions of Dr. Karumudi and Dr. Koban were given "great weight," while the opinion of Dr. Cassone was given "only minimal weight." R. pp. 23-24. The ALJ's decision to give Dr. Cassone's opinion minimal weight is "supported by substantial evidence" within the meaning of 42 U.S.C. § 405(g). As the U.S. Court of Appeals for the Third Circuit explained in *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993), "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason*, 994 F.2d at 1065.

Although the ALJ accorded the opinion of a non-examining state agency medical consultant only

10

minimal weight, it is worth noting that the consultant did not believe that the Plaintiff, as of November 19, 2003, was severely limited by his mental impairments. The consultant opined that the Plaintiff had a mild restriction of his activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and one or two episodes of decompensation of extended duration. R. p. 213. Under these circumstances, it is clear to the Court that the decision of the Commissioner must be affirmed.

In affirming the decision of the Commissioner in this case, the Court is mindful of two important principles. First of all, there is "a distinction between the issue of the existence of a medical condition and the issue of the existence of statutory disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). Second, Congress has clearly mandated that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). So long as the Commissioner's decision is supported by substantial evidence, that decision cannot be set aside even if the Court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

Accordingly, the Court must deny the Motion for Summary Judgment filed by the Plaintiff (Document No. 9) and grant the Motion for Summary Judgment filed by the Commissioner (Document No. 11).

An appropriate Order follows.

11

**AND NOW**, this 22nd day of February, 2007, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 9) is DENIED; and 2) the Defendant's Motion for Summary Judgment (Document No. 11) is GRANTED.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

12